UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEGHAN MAZZOLA,

    Plaintiff,

v.                             CASE No. 8:19-cv-835-T-33TGW

ANDREW SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security does not adequately address the plaintiff's periodic exacerbation of her chronic inflammatory demyelinating polyneuropathy (CIDP) — a circumstance which results in hospitalizations — I recommend that the decision be reversed and the matter remanded for further proceedings.

---

[1]Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was thirty-six years old at the time of the administrative hearing and who has her GED and some college education, has worked primarily as a preschool teacher (Tr. 1180). On December 2, 2015, the plaintiff filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to bulging discs in lower back, torn ligaments in knees, and "fingers" (Tr. 1173). The plaintiff alleged she became disabled on May 25, 2015 (id.). The claims were denied initially and upon reconsideration.

The plaintiff then requested, and was granted, a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "obesity, inflammatory arthritis, polyneuritis, and migraines" (Tr. 138). The law judge concluded that with these impairments the plaintiff was restricted to a limited range of light work (Tr. 139). Specifically, the law judge found the plaintiff (id.)

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and carrying 20 pounds occasionally and 10 pounds frequently; and can stand/walk up to six hours per day; and sit up to six hours per day. The claimant can never climb ladders, ropes, or scaffolds; but can occasionally

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can also frequently reach, handle, finger, and feel; but must avoid vibrations, pulmonary irritants, hazardous machinery, and heights.

Despite these limitations, the law judge found that the plaintiff could perform prior work as a preschool teacher (Tr. 146). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

The Act provides further that a claimant will be found not disabled if she can perform her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff raises four issues: (1) the law judge's determination that the plaintiff's statements regarding her symptoms were inconsistent with the medical and other record evidence is not supported by substantial evidence; (2) Dr. Adam S. Di Dio's opinions from May and September 2016 should be given great weight; (3) the Appeals Council erred in deciding the law judge's decision is not contrary to the weight of the evidence; and (4) the evidence submitted to the Appeals Council is new,

material, and there is good cause why it was not submitted at the time of the hearing (Doc. 17, p. 13).

In her first issue, the plaintiff argues, among other things, that the law judge did not correctly evaluate her impairment of chronic inflammatory demyelinating polyneuropathy (CIDP) (Doc. 17, pp. 15–18). That contention has merit and warrants reversal.

A review of articles found in a Google search of CIDP revealed the following information. CIDP is a neurological disorder characterized by progressive weakness and impaired sensory function in the legs and arms (www.ninds.hih.gov/Disorders/All-Disorders/Chronic-Inflammatory-Demylinating-Polyneuropathy-CIDP-Information-Page). The disorder is caused by damage to the myelin sheath (the fatty covering that wraps around and protects nerve fibers) of the peripheral nerves. Id. CIDP can result in motor impairment, numbness, difficulty walking and general weakness and fatigue (www.medscape.com).

In her memorandum, the plaintiff explains further (Doc. 17, p. 16):

> The treatment typically consists of one of three things. It can be corticosteroids such as prednisone. It can be high-dose intravenous

immunoglobulin (IVIG) or plasma exchange a.k.a. plasmapheresis. The IVIG contains naturally occurring antibodies and is given through a vein over the course of several hours. Plasma exchange is a process by which some of the patient's blood removed in the blood cells returned without the liquid plasma portion of the patient's blood. It may work by removing harmful antibodies contained in the plasma. The gradual onset of CIDP can delay diagnosis by several months or even years, resulting in significant nerve damage that may limit and delay the response to therapy. The chronic nature of CIDP requires long-term care of patients.

The plaintiff complains that the law judge "appears to give [CIDP] short shrift" (id., p. 15). This complaint has some basis since the law judge did not list CIDP as a severe impairment. Rather, he included "polyneuritis" as a severe impairment. CIDP is a distinct and recognized disorder and there is no question that, by the time of the law judge's decision, it was a severe impairment. Consequently, it is puzzling why the law judge did not include CIDP as one of the plaintiff's severe impairments.

More fundamentally, the plaintiff demonstrates that the law judge failed to consider adequately the plaintiff's multiple hospitalizations due to exacerbations of the plaintiff's CIDP. Thus, focusing primarily upon the period beginning in 2017, the plaintiff states that she had five

7

hospital visits in eight months with 32 days of treatment (id., p. 17). In this respect, the plaintiff was in the hospital due to CIDP from January 14, 2017, for five days; from June 12, 2017, for three days; from June 21 until June 26, 2017; from July 14 until July 24, 2017; and from August 31 to September 5, 2017 (id.).

The plaintiff concludes that these hospitalizations would cause her to miss an average of four days of work per month. Importantly, a vocational expert testified missing work "two times per month would be excessive and result in termination" (Tr. 1169).

Further, the plaintiff's hospitalizations for treatment of acute exacerbations continued after September 2017. Thus, on January 15, 2018, the plaintiff was admitted to the hospital due to CIDP acute exacerbation (Tr. 596, 629). She received three doses of IV immunoglobulin and was discharged on January 19, 2018 (Tr. 596).[3]

On January 31, 2018, the plaintiff was taken to the hospital by ambulance due to an overdose of Xanax. While in the hospital, she was diagnosed as having a CIDP acute exacerbation. She received IV

---

[3] Notably, a port was placed in the plaintiff in July 2017 to facilitate her IV treatments.

immunoglobulin daily for five days and was discharged on February 6, 2018 (Tr. 807).

On May 7, 2018, the plaintiff's treating doctor found her to have a CIDP exacerbation and sent her to the hospital, noting a progressive weakness for one week during which the plaintiff had fallen twice (Tr. 350). After receiving IV immunoglobulin, she was discharged on May 12, 2018 (Tr. 331).[4]

Under these circumstances, the law judge needed to address whether the plaintiff's frequent hospitalizations to treat exacerbations of her CIDP would preclude substantial gainful activity. However, he did not do so. In light of the testimony of the vocational expert that employers would not tolerate an employee missing two days of work per month, it is not apparent that employers would accept the amount of time the plaintiff would be absent for her CIDP treatment. Consequently, the decision is deficient on that issue and a remand is warranted. See Samuels v. Acting

---

[4]The law judge cannot be faulted for not addressing the May 2018 hospitalization because the plaintiff was still in the hospital when the law judge issued his decision on May 11, 2018. The records, however, were sent to the Appeals Council and are part of the administrative transcript. Those records, as well as those from January and February 2018, simply corroborate that the hospitalizations in 2017 are part of a continuing problem.

9

Commissioner of Social Security, ___ F.3d ___, 2020 WL 2463717 (11th Cir. May 13, 2020).

It is recognized that the law judge states that "the records indicate that the claimant's CIPD [sic] symptoms were adequately controlled with medications," citing exhibits 44F/41F (Tr. 144). There is no such statement in either exhibit (see Tr. 3516–4123, 4598–4607). Moreover, the statement is contradicted by the plaintiff's frequent flare-ups of CIDP.

Also, the plaintiff testified at the hearing on January 9, 2018, that every three weeks she was then receiving out-patient treatment of six to eight bottles of IVIG (Tr. 1159). She stated that the treatment lasted from about 9:30 or 10:00 a.m. until about 5:30 p.m. (id.). In other words, every three weeks she was spending all day getting treatment. That raises the question whether being absent from work one day every three weeks would be accepted. Unless that length of treatment has been significantly reduced in the meantime, a vocational expert would need to testify whether an employer would tolerate an individual missing one day of work every three weeks.

Because on remand a new decision will be issued, it is appropriate to pretermit the plaintiff's other contentions.

10

IV.

For these reasons, the decision of the Commissioner of Social Security fails to evaluate the effect the plaintiff's hospitalizations will have on her ability to work. I therefore recommend that the decision be reversed and the matter remanded for further consideration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 15, 2020.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.